COPY

Stephen F. Yunker (CSB 110159)
**YUNKER & SCHNEIDER**
655 West Broadway, Suite 1400
San Diego, California 92101
Tel: (619) 233-5500
Fax: (619) 233-5535
Email: sfy@yslaw.com

James M. Pietz (*pro hac* to be filed)
**PIETZ LAW OFFICE**
429 Forbes Avenue, Suite 1616
Allegheny Building
Pittsburgh, Pa. 15219
Tel: 412-288-4333
Fax: 412-288-4334
email: jpietz@jpietzlaw.com

Joseph N. Kravec, Jr. (*pro hac* to be filed)
Wyatt A. Lison (*pro hac* to be filed)
**STEMBER FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA 15219
Tel: (412) 281-8400
Fax: (412) 281-1007
Email:jkravec@stemberfeinstein.com
Email: wlison@stemberfeinstein.com

***ATTORNEYS FOR PLAINTIFFS***

FILED 2013 FEB -1 PM 3:55 CLERK U.S. DISTRICT COURT CENTRAL DISTRICT OF CALIF. SANTA ANA BY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION – SANTA ANA COURTHOUSE

| | |
|---|---|
| **OMAR TIGBAO and DOROTHY TIGBAO** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**QBE FINANCIAL INSTITUTION RISK SERVICES, INC., d/b/a QBE FIRST, a Delaware Corporation, and DOES 1-50,**<br><br>Defendants. | **CASE NO.:**  SACV13-00177 JST (MLGx)<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT; AND COMMON LAW RESTITUTION BASED ON QUASI-CONTRACT/UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

1

Class Action Complaint for Violation Of The California Unfair Competition Law; Violation of the Federal Fair Debt Collection Practices Act; and Common Law Restitution Based On Quasi-Contract/Unjust Enrichment; Case No.:

Plaintiffs Omar Tigbao and Dorothy Tigbao, by their attorneys, bring this class action against QBE Financial Institution Risk Services, Inc. d/b/a QBE FIRST ("QBE FIRST"), and DOES 1-50, on their own behalf and on behalf of all others similarly situated, and allege as follows based upon the information and belief and the investigation of their counsel:

## INTRODUCTION

1.    This is a class action brought under California and federal law against QBE FIRST and against affiliates of QBE FIRST – sued herein as DOEs – which may be liable with QBE FIRST on behalf of two putative nationwide classes of consumers, a "FPI Class" and a "FDCPA Class" as further defined herein.

2.    QBE FIRST is hired by mortgage lenders and mortgage servicers to monitor mortgage borrowers' accounts to ensure they maintain hazard insurance for the mortgage as required by their mortgages and, if the borrower fails to maintain the required insurance, to make the decision to order "force-placed insurance" ("FPI") for the borrower's property protecting the mortgagee, and to set the date when FPI coverage begins.  However, in violation of California law, QBE FIRST makes the decision to place FPI for a period of time when insurance protecting the mortgagee already exists.  FPI is then issued by QBE Insurance Corporation, a QBE FIRST affiliated insurance company, or by another QBE-affiliated force-placed insurer, with the cost of the FPI being charged Plaintiffs and other similarly situated borrowers, including charges for the period of time when insurance protecting the mortgagee already exists.

3.    Further, as part of QBE FIRST's FPI program, QBE FIRST acts as a third-party debt collector for mortgage servicers to collect from borrowers the debts related to the placement of FPI.  However, in violation of the federal Fair Debt Collection Practices Act ("FDCPA"), QBE FIRST misrepresents its identity in attempting to collect the debts created by its FPI program, QBE FIRST attempts to collect a debt that is neither authorized by the parties' agreement nor validly owed,

Class Action Complaint for Violation Of The California Unfair Competition Law; Violation of the Federal Fair Debt Collection Practices Act; and Common Law Restitution Based On Quasi-Contract/Unjust Enrichment;

1   and QBE FIRST fails to give borrowers the required validation notice after first
2   contacting them about the debt.

3       4.    Plaintiffs allege that QBE FIRST's conduct, which emanates out of
4   Irvine, California, violates the unfair prong of California's Unfair Competition Law
5   codified at Business and Professions Code sections 17200, *et seq.* (the "UCL"),
6   violates the FDCPA, and is grounds for common law restitution on the basis of quasi-
7   contract/unjust enrichment.

8       5.    Plaintiffs also seek injunctive and declaratory relief based upon QBE
9   FIRST's conduct asserted in this Complaint.  As of the date of this Complaint, QBE
10  FIRST continues to unfairly order the placement of FPI for a period of time when
11  borrowers have existing insurance coverage protecting the mortgagee.  Accordingly,
12  Plaintiffs seek declaratory and injunctive relief to stop such unfair business practices
13  by QBE FIRST.

14      6.    The claims herein were previously brought by the named plaintiffs Omar
15  Tigbao and Dorothy Tigbao, and by current non-party Michael D. Riese, in a federal
16  class action filed on December 28, 2012 in the Eureka Division of the Northern
17  District of California, and styled *Michael D. Riese, Omar Tigbao and Dorothy Tigbao*
18  *on behalf of themselves and all others similarly situated, Plaintiffs v. QBE Financial*
19  *Institution Risk Services, Inc. d/b/a QBE FIRST, a Delaware Corporation, and DOES*
20  *1-50, Defendants,* Case No. C 12-6564 NJV, and reassigned on January 24, 2013 to
21  the Oakland Division under Case No. C 12-6564 PJH.

22      7.    However, in late January Mr. Riese – a resident of Eureka – was
23  obligated to withdraw as a named plaintiff in the previous action due to recently
24  discovered concerns about his adequacy as a class representative that could not be
25  resolved without further information.  Without Mr. Riese, the Northern District of
26  California was not the appropriate venue for an action between Pennsylvania plaintiffs
27  and a company acting substantially out of Irvine, California.  Meanwhile, potentially
28  applicable and impending time-bar issues that might have affected certain of the

Class Action Complaint for Violation Of The California Unfair Competition Law; Violation of the Federal Fair Debt
Collection Practices Act; and Common Law Restitution Based On Quasi-Contract/Unjust Enrichment;

1   named plaintiffs Omar Tigbao and Dorothy Tigbao's claims did not leave adequate

2   time for a stipulated and/or ordered change of venue for the previous case.

3   Consequently, all three prior named plaintiffs promptly dismissed the previous case

4   without prejudice, and named plaintiffs Omar Tigbao and Dorothy Tigbao alone filed

5   this action in the Central District of California because all the actions of defendants

6   complained of herein emanate from Irvine, California.

7                                    **PARTIES**

8          8.       Representative Plaintiffs Omar Tigbao, also known as Omar Al-

9   Alabdullatif ("Mr. Tigbao"), and his wife Dorothy Tigbao ("Mrs. Tigbao")

10  (collectively "the Tigbaos") are residents of Washington in Washington County,

11  Pennsylvania. At all material times, they were the owners of a home in that county

12  purchased with a mortgage loan from Ameriquest Mortgage Company. That home

13  was insured for a period of time under an FPI policy issued by QBE Insurance

14  Corporation, placed by QBE FIRST. Before being force-placed with the QBE

15  Insurance Corporation FPI policy, the Tigbaos maintained their own hazard insurance

16  coverage with Liberty Insurance Corporation ("Liberty Mutual"). Despite the Tigbaos

17  having hazard insurance coverage with Liberty Mutual, QBE FIRST made the

18  decision to place FPI on the Tigbaos' property, chose the date when the FPI coverage

19  started, and added the premium for the FPI to the Tigbaos' mortgage. Before QBE

20  FIRST made the decision to place the Tigbaos with the QBE Insurance Corporation

21  FPI policy, the Tigbaos received FPI "cycle letters" from QBE FIRST, attempting to

22  collect a debt for their FPI.

23         9.       Defendant QBE Financial Institution Risk Services, Inc. ("QBE FIRST"),

24  d/b/a QBE FIRST and f/k/a Sterling National Corporation, is a wholly owned

25  subsidiary of QBE Holdings, Inc., an Australian corporation.  QBE FIRST is a

26  Delaware corporation with its corporate headquarters located in Atlanta, Georgia.

27  QBE FIRST touts itself as being a leading provider of mortgage lender-placed

28  protection solutions, with fully integrated monitoring and placing functions.  QBE

1  FIRST, either directly or through its affiliates and/or subsidiaries, operates its hazard

2  insurance monitoring and placing services for mortgage servicers and borrowers out

3  of its offices in Irvine, California.  When QBE FIRST makes the decision to order FPI

4  for a borrower, it places an order for the FPI policy with its affiliated insurance

5  company QBE Insurance Corporation, or with another QBE-affiliated force-placed

6  insurer, which then issues the FPI that is charged to the borrower.

7        10.    Defendants DOES 1-50 are affiliates and/or subsidiaries of QBE FIRST

8  whose exact identities, capacities, involvements, and liability in the wrongdoing by

9  QBE FIRST are presently unknown to Plaintiffs, who therefore sue such DOE

10  defendants under such fictitious names pursuant to Section 474 of the California Code

11  of Civil Procedure.  Plaintiffs will amend this complaint as may be necessary when

12  the exact identities, capacities and involvements of the DOE defendants become

13  known, and in the event discovery reveals to Plaintiffs that any of the DOE defendants

14  may be liable for the claims asserted herein.

15                      **JURISDICTION AND VENUE**

16        11.    Jurisdiction of this Court is proper under 28 U.S.C. § 1331, 1332(d)(2),

17  and 15 U.S.C. 1692i(d).  There is federal question jurisdiction over the Tigbaos' Fair

18  Debt Collection Practices Act claim, which may be brought in any appropriate U.S.

19  District Court without regard to the amount in controversy.  Supplemental jurisdiction

20  under 28 U.S.C. §1367 exists over the Tigbaos' state law claims.  Moreover, complete

21  diversity between the parties exists.   Representative Plaintiffs Tigbaos are

22  Pennsylvania residents, residing in Washington, Pennsylvania.   Defendant QBE

23  FIRST is incorporated in Delaware, has its principal place of business in Atlanta,

24  Georgia, and operates all of its hazard insurance monitoring and decision-making

25  regarding the placing of FPI at its offices in Irvine, California.[1]  The nationwide

26

27  ──────────────

28  [1] *See* Exhibit 1, Testimony of Nicholas Pastor and Matthew Freeman on behalf of QBE Insurance
Corporation and QBE First Insurance Agency, Inc., dated May 1, 2012, p. 7.

1   classes alleged herein, as further defined below, consist of citizens and residents of

2   states across the country, and the amount in controversy exceeds $5,000,000.00 for

3   Representative Plaintiffs and class members collectively, exclusive of interest and

4   costs, by virtue of the combined premiums paid by Plaintiffs and the Class and the

5   profits reaped by QBE FIRST from its transactions with Plaintiffs and the classes, as a

6   direct and proximate result of the wrongful conduct alleged herein, and by virtue of

7   the injunctive and equitable relief sought.

8       12.    Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391.

9   A substantial portion of the events complained of herein occurred in Irvine, California

10  within this judicial district, and affected persons are in this judicial district.  Moreover,

11  QBE FIRST has received substantial compensation from such transactions and

12  business activity in this judicial district, including as the result of its decision to place

13  FPI and its debt collection activities, all of which  take place in and emanate from

14  Irvine, California.   QBE FIRST also inhabits and/or may be found in this judicial

15  district, and the interstate trade and commerce relating to FPI described herein is, has

16  been carried out, and still emanates today from Irvine, California within this judicial

17  district.

18                                **BACKGROUND**

19      13.    The typical mortgage offered by institutional lenders, including

20  Plaintiffs' mortgages, requires that the borrower maintain hazard insurance on the

21  property securing the mortgage up to the mortgagee's interest in the property (i.e., the

22  outstanding balance of the mortgage loan), and that such hazard insurance contain a

23  provision protecting the lender's interest in the property.   The typical provisions

24  required by a mortgage contract can be called standard mortgage clauses, loss payee

25  clauses, or a lender's loss payable endorsements (hereafter referred to generally as a

26  "Mortgage Clause").   Mortgage agreements entered in California and throughout the

27  entire United States are materially similar in requiring that borrowers maintain hazard

28  / / /

Class Action Complaint for Violation Of The California Unfair Competition Law; Violation of the Federal Fair Debt
Collection Practices Act; and Common Law Restitution Based On Quasi-Contract/Unjust Enrichment;

insurance on the property secured by the mortgage, and that said hazard insurance contain a Mortgage Clause.

14.   A Mortgage Clause that protects a mortgage lender's interest in the property securing a mortgage has been required by lending institutions in the United States for over a century.  Due to this long-standing requirement, all major insurance companies offering the typical hazard insurance policy include a Mortgage Clause in their hazard insurance contracts.

15.   Mortgage lenders require that the borrower's hazard insurance policy contain a Mortgage Clause because it protects the mortgage lender's interest in the secured property by providing that if the insurance company decides to cancel or not renew the borrower's policy, the policy's coverage will continue for the lender's interest in the property for a set number of days.  A standard mortgage clause or a loss payee clause typically extends the lender's coverage for the security for 10 to 20 days after the borrower's individual coverage ends.   This 10 to 20 day extension of insurance coverage for the lender under a standard mortgage clause or a loss payee clause begins to run only after the insurance company provides the mortgagee with specific notice of the cancellation or nonrenewal of the borrower's individual coverage.

16.   The Mortgage Clause typically used in California and other nearby western states – which is similar to the operation of the standard mortgage clause and loss payee clause – is the  lender's loss payable endorsement, which provides for an extended period of coverage for the mortgagee for a minimum of 70 days of coverage as follows:

> In the event of failure of the insured to pay any premium or additional premium which shall be or become due under the terms of this policy ... this Company agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after due date of such premium and it is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by this Company of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days

---

7

following receipt of the Company's demand in writing therefore. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before (10) days after receipt of said written notice by the Lender.

Also similar to the operation of the standard mortgage clause and loss payee clause, the coverage for the lender under the lender's loss payable endorsement's coverage begins to run only after the insurance company provides specific notice to the mortgagee of the cancellation or nonrenewal of the borrower's individual coverage.

17.   As the lender's extended coverage provided under a Mortgage Clause does not begin to run until after the mortgagee is given specific notice of the cancellation or nonrenewal of the borrower's individual coverage, a notice of cancellation due to non-payment of premium cannot effectively be provided to a mortgage lender or its mortgage servicer until after the borrower fails to pay the premium at the end of the policy's term (*i.e.*, the last day of coverage). The mere receipt of a notice from an insurance company that a homeowner's hazard insurance policy might terminate in the future if the borrower decides not to renew their policy does not satisfy a Mortgage Clause's notice requirement because a borrower can, and often does, pay the renewal premium on the last day of their hazard insurance coverage.

18.   Mortgage lenders require that borrowers obtain a hazard insurance policy with a Mortgage Clause so that, in the event that a borrower fails to pay the premium for their hazard insurance, the mortgage lender will still be protected by that policy for a finite period of time sufficient to obtain its own insurance on the property. As a matter of contractual rights under a Mortgage Clause, the mortgagee's rights provided by a borrower's hazard insurance policy are separate and distinct from those of the borrower, and the lender's rights cannot be terminated by anything done or not done by the borrower including the non-payment of premiums. Thus, the insurance coverage provided to the lender by a Mortgage Clause that insures the lender's interest

/ / /

1    in the secured property satisfies a mortgage contract's requirement that the borrower

2    have hazard insurance, even if the borrower's individual coverage lapses.

3        19.    In addition to requiring that borrowers maintain hazard insurance that

4    contains a Mortgage Clause, the typical home mortgage entered in California and

5    throughout the United States contains a provision that if a borrower fails to maintain

6    hazard insurance, the lender has the right to obtain hazard insurance for the secured

7    property and charge the premium for said insurance to the borrower by adding the

8    premium amount to the principal balance of the mortgage.

9        20.    Such insurance purchased by a mortgage lender and charged to the

10   borrower to cover the property secured by the mortgage is called lender-placed or

11   force-placed insurance ("FPI").  As QBE FIRST explains it, "[FPI] is structured to

12   ensure that each mortgaged property is never without insurance coverage.  The

13   mortgage documents, GSE guidelines (i.e., Fannie Mae and Freddie Mac) and investor

14   requirements mandate that there be no lapse in property coverage on the mortgage

15   collateral."[2]

16       21.    Frequently the actual lenders of purchase money or refinance funds for

17   real property mortgages may transfer some or all of their interests in such loans to

18   third party investors in the so-called "secondary market" for such loans.

19   Consequently, the actual servicing of mortgage loans is carried out by mortgage

20   servicers which may or may not be the actual original lenders, but which nevertheless

21   hold the rights of the lender under such mortgages – including the right to impose FPI

22   on borrowers – as the original mortgagee, or as an assignee of the original mortgagee

23   and/or its successors in interest (hereinafter the "Mortgage Lenders/Servicers").

24       22.    A Mortgage Lenders/Servicer which purchases FPI does so as the agent

25   for the borrower because the FPI covers, in part, the borrower's interest in the

26   / / /

27

28   [2] Exhibit 1, p. 13.

Class Action Complaint for Violation Of The California Unfair Competition Law; Violation of the Federal Fair Debt
Collection Practices Act; and Common Law Restitution Based On Quasi-Contract/Unjust Enrichment;

1  property, and the premium for the FPI is charged to the borrower and becomes the

2  borrower's debt.

3      23.    Like typical home mortgages, Plaintiffs' mortgages required that they

4  maintain hazard insurance that contained a Mortgage Clause, and Plaintiffs did, in

5  fact, purchase hazard insurance with Mortgage Clauses.

6  **QBE FIRST IS THE AGENT FOR MORTGAGE LENDERS/SERVICERS IN
   MONITORING THE STATUS OF BORROWERS' HAZARD INSURANCE,**

7  **ORDERING FPI AT A TIME PERIOD WHEN IT IS CONTRACTUALLY
   REQUIRED, AND COLLECTING ANY DEBT CREATED BY THE FPI**

8  **FROM THE BORROWER**

9

10     24.    QBE FIRST contracts with numerous Mortgage Lenders/Servicers,

11  including the Tigbaos' Mortgage Lenders/Servicers American Home Mortgage

12  Servicing, Inc. ("American Home"), to act as the Mortgage Lenders'/Servicers' agent

13  in monitoring the Mortgage Lenders'/Servicers' book of loans to ensure that each

14  borrower maintains the hazard insurance required by their mortgage.  QBE FIRST's

15  FPI program was modeled after the insurance monitoring and FPI placement program

16  designed by American Security Insurance Corp. ("ASIC"), and QBE FIRST received

17  approval of its FPI program and the rates associated with the FPI through "me too"

18  filings of ASIC's program with state insurance commissioners.[3]

19     25.    As part of QBE FIRST's standardized FPI program, QBE FIRST tracks

20  properties within a Mortgage Lenders'/Servicers' portfolio to determine the presence

21  or absence of hazard insurance coverage.  For non-escrowed accounts (*i.e.*, accounts

22  with escrow agreements established for the purpose of paying for hazard insurance),

23  this requires confirmation of insurance coverage on each piece of property and

24  confirmation of the renewal of that insurance on an annual basis.

25     26.    In order to fulfill this tracking function, QBE FIRST maintains a record

26  of the Mortgage Lenders'/Servicers' requirements for hazard insurance, obtains copies

27  ────────────

28  [3] Exhibit 1, pp. 3-4.

Class Action Complaint for Violation Of The California Unfair Competition Law; Violation of the Federal Fair Debt
Collection Practices Act; and Common Law Restitution Based On Quasi-Contract/Unjust Enrichment;

1   of borrowers' hazard insurance policies to ensure the coverage is acceptable to the
2   lender including that the policy
3   has a Mortgage Clause, and tracks the coverage's term.  Indeed, QBE FIRST touts
4   itself as having a "state-of-the-art tracking process ... to obtain accurate insurance
5   information before placing [FPI]."[4]

6       27.    Through QBE FIRST's standardized FPI program, QBE FIRST notifies
7   borrowers about their hazard insurance obligation under their mortgage contracts.
8   When QBE FIRST is notified by an insurance company that the borrower's hazard
9   insurance coverage or the Mortgage Lenders'/Servicers' coverage under the
10  borrower's policy is in danger of lapsing, QBE FIRST sends multiple letters on the
11  borrower's Mortgage Lenders'/Servicers' letterhead – often termed "cycle letters" –
12  informing the borrower that FPI will be placed if the borrower does not prove they
13  have hazard insurance coverage required by their mortgage contract.

14      28.    Despite the cycle letters being on a Mortgage Lenders'/Servicers'
15  letterhead, Mortgage Lenders/Servicers who contract with QBE FIRST do not draft or
16  mail any of the FPI cycle letters to borrowers.

17      29.    Rather than being drafted or mailed by the Mortgage Lenders/Servicers
18  whose names appear in the cycle letters, the cycle letters are drafted by QBE FIRST in
19  Irvine, California, sent from QBE FIRST's Irvine, California offices to the borrowers,
20  and any responses by borrowers (whether written, telephonic, facsimile or electronic
21  mail) are directed to QBE FIRST at its Irvine, California offices.  Indeed, all of QBE
22  FIRST's actions *vis-à-vis* borrowers' FPI coverage regarding (1) the requirement to
23  maintain hazard insurance; (2) the collection of any debt related to FPI; and/or (3) the
24  decision to place FPI and the beginning date of the FPI coverage, are done exclusively
25  by QBE FIRST from QBE FIRST's offices in Irvine, California in accord with QBE
26  / / /

27  
28  [4] Exhibit 1, p. 12.

11

FIRST's standardized FPI program for all Mortgage Lenders/Servicers that contract with QBE FIRST.

30.    If a borrower fails to maintain the hazard insurance required by their mortgage contract, QBE FIRST's FPI program is designed for QBE FIRST to act as the Mortgage Lenders'/Servicers' and borrowers' agent to purchase FPI for the borrower and the lender.

31.    When FPI is needed, QBE FIRST primarily purchases FPI from its affiliated insurance company, QBE Insurance Corporation, or from another QBE-affiliated FPI insurer.  In exchange for placing the FPI coverage with QBE Insurance Corporation or with another QBE-affiliated FPI insurer, QBE FIRST receives a percentage of the net written premium of the FPI policies those insurers write and, in some years, an additional contingent commission based on the profitability of QBE Insurance Corporation.[5]  Plaintiffs are informed and believe, and thereon allege, that QBE FIRST has a similar commission arrangement with any other QBE-affiliated FPI insurers with which it does business.

32.    QBE FIRST, throughout the entire class period alleged herein, operated its FPI-related activities out of various offices located in Orange County, California. QBE FIRST's FPI-related activities came to be consolidated in offices located in Irvine, California due to QBE FIRST's acquisition on June 1, 2011 of the FPI business of Balboa Insurance Company ("Balboa") – then the second-largest FPI insurer in the country.  QBE FIRST acquired Balboa from BofA and, as part of the deal, assumed all lender-placed insurance liabilities from Balboa and its affiliates. Included in the deal to purchase Balboa was QBE FIRST's acquisition of Newport Management Corporation, Balboa's affiliate that performed all of Balboa's hazard insurance tracking services.  Also included in the deal was a ten year agreement with

/ / /

[5] Exhibit 1, p. 7.

Class Action Complaint for Violation Of The California Unfair Competition Law; Violation of the Federal Fair Debt Collection Practices Act; and Common Law Restitution Based On Quasi-Contract/Unjust Enrichment;

1  Bank of America for QBE FIRST to provide third-party vendor services as Bank of

2  America's FPI manager under QBE's standardized FPI program.

3        33.    Prior to June 1, 2011, the tracking and placement of FPI by Balboa and

4  Newport Management Corporation, Balboa's FPI monitoring affiliate, occurred out of

5  those companies' Irvine, California offices.   Balboa and Newport Management

6  Corporation performed materially the same function as QBE FIRST in monitoring

7  Mortgage Lenders'/Servicers' books of mortgage loans to ensure that borrowers

8  maintain hazard insurance coverage required by their mortgage loan and, if not,

9  making the decision to purchase FPI on behalf of the borrower and their Mortgage

10  Lender/Servicer, and making the decision to back-date the FPI coverage to the day

11  when the borrower's individual coverage lapsed.   All of Balboa's and Newport

12  Management Corporation's FPI tracking and placement decisions were made from

13  Balboa's and Newport Management Corporation's offices in Irvine, California, and

14  when they made the decision to purchase FPI, it was placed with Meritplan Insurance

15  Company or another Balboa-affiliated force-placed insurance provider.

16        34.    On June 1, 2011 when QBE FIRST assumed the assets and liabilities of

17  Balboa's FPI business, QBE FIRST continued to use the same FPI cycle letters

18  drafted by Balboa, and mailed them out as its own cycle letters on behalf of the

19  Mortgage Lenders/Servicers that QBE FIRST began working for when it took over

20  Balboa.  Additionally, for Balboa's former Mortgage Lender/Servicer customers that

21  QBE FIRST began servicing on June 1, 2011, QBE FIRST continued to place FPI

22  with Meritplan Insurance Company or other Balboa-affiliated force-placed insurance

23  providers as Balboa had done.  Beginning in June of 2012, QBE FIRST began placing

24  all new and renewal FPI policies from its acquired Balboa business with QBE

25  Insurance Corporation.

26        35.    QBE FIRST's practice of sending cycle letters to Balboa's former

27  customers' borrowers and back-dating any FPI purchased to the date when the

28  borrowers still maintained their own hazard insurance coverage required by their

1  mortgage loan by virtue of the Mortgage Clauses in their hazard insurance policies

2  was in all material ways the same as QBE FIRST's own FPI program as described

3  herein, and was a continuation of Balboa's own unfair back-dating practices.

4       36.   In addition to providing notification to borrowers about the hazard

5  insurance requirements on behalf of the borrower's Mortgage Lender/Servicer, under

6  QBE FIRST's standardized FPI program, QBE FIRST also acts as a debt collector *vis-*

7  *à-vis* hazard insurance coverage.  When QBE FIRST is notified that a borrower's

8  hazard insurance coverage has been cancelled or lapsed, QBE FIRST begins issuing

9  the so-called cycle letters that first notify borrowers that they are obligated by their

10  mortgage agreement to purchase hazard insurance covering the Mortgage

11  Lenders'/Servicers' interest in the property.  If a borrower fails to provide QBE

12  FIRST with timely proof of acceptable insurance, QBE FIRST then notifies borrowers

13  that their Mortgage Lender/Servicer secured a temporary insurance binder and that the

14  borrower is obligated by their mortgage agreement to purchase hazard insurance for

15  the property securing the mortgage in order to prevent the placement of FPI.  When

16  FPI is placed, QBE FIRST notifies borrowers of their obligation to pay for the FPI

17  coverage that covers their property.  Through these debt collection cycle letters, QBE

18  FIRST attempts to collect the alleged debt created by the obligation to obtain hazard

19  insurance coverage, and the alleged debt created by the obligation to pay the premium

20  for any FPI placed.

21       37.   QBE FIRST's FPI program has been extremely profitable.  In 2011

22  alone, QBE FIRST's FPI program accounted for $2,032,830,000 of its parent

23  company's $7,529,000,000 gross written premiums.[6]

24  / / /

25  / / /

26  / / /

27  _____

28  [6] *See* Exhibit 2, excerpts of QBE Insurance Group's Annual Report from December 2011, p. 30.

14

Class Action Complaint for Violation Of The California Unfair Competition Law; Violation of the Federal Fair Debt
Collection Practices Act; and Common Law Restitution Based On Quasi-Contract/Unjust Enrichment;

**QBE FIRST UNFAIRLY PLACES FPI WHEN BORROWERS MAINTAIN
EXISTING INSURANCE COVERAGE UNDER THEIR INSURANCE
POLICY'S MORTGAGE CLAUSE THAT SATISFIES THEIR
REQUIREMENT FOR HAZARD INSURANCE PROTECTING THEIR
MORTGAGE LENDER'S/SERVICER'S INTERESTA AS REQUIRED BY
THEIR MORTGAGE**

38.   QBE FIRST, on behalf of Mortgage Lenders/Servicers and pursuant to its standardized FPI program, is obligated to secure FPI only when a borrower does not have hazard insurance as required by their mortgage contract. As the typical mortgage loan only requires that a borrower maintain coverage for the lender's interest in the property securing the mortgage, and does QBE FIRST's FPI program has been extremely profitable. In 2011 alone, QBE FIRST's FPI program accounted for $2,032,830,000 of its parent company's $7,529,000,000 gross written premiums. not require that the borrower maintain hazard insurance covering his or her individual interest in the property, the coverage provided to the mortgage lender by a Mortgage Clause that extends beyond the borrower's coverage satisfies the mortgage contract's hazard insurance requirement during the period of such extended coverage.

39.   Due to its many years and vast institutional experience with hazard insurance policies, QBE FIRST knew or should have known that a Mortgage Clause provides coverage for the mortgage lender's interest beyond the cancellation or lapse of a borrower's individual coverage. QBE FIRST also knew or should have known by virtue of having access to each Mortgage Lender's/Servicer's hazard insurance requirement that the coverage provided by a Mortgage Clause satisfies the mortgage contract's hazard insurance requirement. Yet, despite the Mortgage Clause's continuing coverage for Mortgage Lenders/Servicers, QBE FIRST, through its standardized FPI program, makes the decision to procure FPI coverage back-dated to the day when the borrower's individual coverage lapses or cancels, rather than the date when the mortgage lender's coverage ends. QBE FIRST's decision to place the insurance back to the date when the borrower's coverage lapses or cancels, rather than when the lender's coverage terminates, is made in QBE FIRST's offices in Irvine, California.

40.     Representative Plaintiffs Tigbaos' FPI situation illustrates QBE FIRST's monitoring of their hazard insurance, its unfair decision to place FPI back-dated to the day when their individual coverage lapsed despite the fact that they had continuing coverage for their mortgage lender pursuant to their hazard insurance policy's Mortgage Clause, and QBE FIRST's debt collection efforts.

41.     The Tigbaos entered into a mortgage agreement with Ameriquest Mortgage Company on October 7, 2005.[7]   As with the typical mortgage agreement used in California and throughout the United States, the Tigbaos' mortgage contract includes a provision requiring them to maintain hazard insurance as follows:

> **5. Property Insurance**.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.
>
> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.   Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under Section 5 shall become additional debt of Borrower secured by this Security Instrument.   These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

---

[7] *See* Exhibit 3, the Tigbaos' Mortgage Agreement.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the Policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

42.   Pursuant to the terms of their mortgage agreement with Ameriquest Mortgage Corporation, the Tigbaos purchased hazard insurance through Liberty Insurance Corporation ("Liberty Mutual") for a policy period June 19, 2010 to June 19, 2011.[8] The Tigbaos' Liberty Mutual policy contained a Mortgage Clause as required by their mortgage agreement, naming American Home, the Tigbaos' mortgage servicer, as the mortgagee.[9] The Tigbaos' Mortgage Clause states, in part, "[i]f we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect."

43.   The Tigbaos' Liberty Mutual policy was renewed for a policy term from June 19, 2011 to June 19, 2012 under the same material terms as the June 19, 2010 to June 19, 2011 policy, including listing American Home as the mortgagee, and containing the same Mortgage Clause.

44.   On October 12, 2011, the Tigbaos received a letter from Liberty Mutual stating if they failed to pay their Liberty Mutual premium before November 16, 2011, Liberty Mutual would cancel their hazard insurance policy.[10] This notice was not provided to QBE FIRST or American Home.

45.   The Tigbaos failed to pay Liberty Mutual the requested premium before November 16, 2011.

---

[8] *See* Exhibit 4, the Tigbaos' Liberty Mutual Homeowners insurance policy.

[9] *Id.*, declaration p. 2 and policy p. 10.

[10] *See* Exhibit 5.

Class Action Complaint for Violation Of The California Unfair Competition Law; Violation of the Federal Fair Debt Collection Practices Act; and Common Law Restitution Based On Quasi-Contract/Unjust Enrichment;

46.   In a notice countersigned on November 22, 2011, Liberty Mutual informed the Tigbaos that their homeowner's hazard insurance policy was cancelled effective November 16,

2011.[11]   This notice identifies American Home as the mortgagee and lists QBE FIRST's California address as the address for American Home.

47.   Pursuant to the Mortgage Clause in the Tigbaos' Liberty Mutual policy, American Home's coverage under the Liberty Mutual policy continued for at least 10 days after American Home was notified that the Tigbaos' coverage under the Liberty Mutual policy was cancelled.  Thus, if the notice countersigned November 22, 2011 was provided to American Home on that day, American Home's interest in the Tigbaos' property would have been covered by the Liberty Mutual policy until at least December 2, 2011, *i.e.*, 10 days from being notified that the Tigbaos' Liberty Mutual policy was cancelled.

48.   On November 30, 2011, QBE FIRST sent the Tigbaos the first cycle letter referencing "HAZARD INSURANCE WARNING COVER LETTER NON-ESCROW."   This cycle letter purports to be from American Home as it was represented to having been sent by American Home, it contains American Home's letterhead, and it suggests any responding communications be

sent to American Home.[12]   This "HAZARD INSURANCE WARNING COVER LETTER NON-ESCROW" cycle letter indicates that:

> We have been notified that the insurance policy protecting the property shown above has cancelled or expired.  We have not received a new or renewal insurance policy.  Please forward a copy of your policy, referencing the loan number shown above.  In the absence of evidence of insurance, we have secured temporary insurance coverage **through QBE Insurance Corporation.**  ... "If you do not provide evidence of insurance before the end of the temporary insurance period, we will purchase a one (1) year policy for your property.  The full year premium for this policy is shown on the attached form.  This premium will be charged at the end of the temporary insurance coverage period.  If American Home Mortgage Servicing, Inc.

---

[11] *See* Exhibit 6.

[12] *See* Exhibit 7.

Class Action Complaint for Violation Of The California Unfair Competition Law; Violation of the Federal Fair Debt Collection Practices Act; and Common Law Restitution Based On Quasi-Contract/Unjust Enrichment;

1  advances the premium, you will be required to repay the amount shown on the enclosed document, as well as interest based on the rate of your current loan.

2

3  49.   Despite the "HAZARD INSURANCE WARNING COVER LETTER NON-ESCROW" cycle letter being held out as being from American Home, it was actually drafted by and mailed by QBE FIRST without making any reference to QBE FIRST.  The letter indicates that a copy of any hazard insurance policy should be sent to P.O. Box 949, Orange, California which is QBE FIRST's address.  This letter also instructs the Tigbaos to update their hazard insurance information at QBE FIRST's website www.updatemyinsurance.com which is operated out of QBE FIRST's Irvine, California offices.  Moreover, this cycle letter suggests faxing a copy of any hazard insurance policy to an Irvine, California fax number owned by QBE FIRST.

50.   In its November 30, 2011 "HAZARD INSURANCE WARNING COVER LETTER NON-ESCROW" cycle letter, QBE FIRST admits the letter is an attempt to collect a debt and it, as the true initiator of the communication, is acting as a debt collector attempting to collect a debt, as follows:

AMERICAN HOME MORTGAGE SERVICING, INC., IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  HOWEVER, IN THE EVENT THE DEBT HAS BEEN DISCHARGED PURSUANT TO OR THE ADDRESSEE OR RECIPIENT IS UNDER THE PROTECTION OF FEDERAL BANKRUPTCY LAW, THIS COMMUNICATION IS SOLELY FOR INFORMATIONAL PURPOSES AND IS NOT AN ATTEMPT TO COLLECT A DEBT.

The debt QBE FIRST was attempting to collect in its first cycle letter to the Tigbaos was the obligation of the Tigbaos to purchase hazard insurance for the property that was the security for their mortgage loan.

51.   Nothing in QBE FIRST's November 30, 2011 cycle letter indicated it was actually prepared by or mailed by QBE FIRST, and not American Home.

52.   Enclosed with the November 30, 2011 letter was a notice from QBE Insurance Corp. that a 90 day binder had been placed for the Tigbaos' residence with a

/ / /

policy term from November 16, 2011 to November 16, 2012.[13]   The 90-Day Binder indicates, "[w]e have secured temporary coverage in the form of a 90-day binder through the Company shown above [QBE Insurance Corporation] and you will be charged for the policy premium.…   If evidence of acceptable coverage is received during this binder period, you will be charged only for any lapse in coverage."  The premium for the policy is listed as $1,900.80 and for a term from November 16, 2011 to November 16, 2012.[14]

53.   Neither the November 16, 2011 date for the beginning of the 90-day binder's term, nor the $1,900.80 listed as the premium for the policy's term, accounts for the fact that American Home was covered by the Tigbaos' Liberty Mutual hazard insurance coverage until at least December 2, 2011 by virtue of the Mortgage Clause in the Tigbaos' Liberty Mutual policy.  Like the average homeowner, the Tigbaos did not understand the complex workings of their insurance contract or the Mortgage Clause, and did not know that the coverage they purchased under the Mortgage Clause provided American Home coverage for its interest in the property secured by their mortgage until at least December 2, 2011.

54.   QBE FIRST however, unlike the Tigbaos or the average homeowner, by virtue of knowing American Home's requirements for hazard insurance, having the Tigbaos' Liberty Mutual policy that contained the Mortgage Clause, and its vast experience in the FPI insurance industry,

knew or should have known that American Home's coverage on the Tigbaos' property under the Liberty Mutual policy continued until at least December 2, 2011.

55.   On December 30, 2011, QBE FIRST sent the Tigbaos a second cycle letter referencing "Hazard Insurance Reminder," purportedly sent by American

/ / /

---

[13] *See* Exhibit 8.

[14] *Id.*

Home.[15]   Like QBE FIRST's first cycle letter, this second cycle letter was neither drafted nor mailed by American Home.

56.   QBE FIRST's "Hazard Insurance Reminder" cycle letter indicated that the Tigbaos had not provided American Home with proof of hazard insurance, and notified them that if proof was not provided that American Home would purchase FPI and charge the cost of the premium for the FPI to them.

57.   Despite the "Hazard Insurance Reminder" cycle letter representing that it was from American Home, it was actually drafted and mailed by QBE FIRST out of its Irvine, California offices.  The "Hazard Insurance Reminder" cycle letter indicated that a copy of any hazard insurance policy should be sent to QBE FIRST's P.O. Box 949, Orange, California, and instructed the Tigbaos to update their hazard insurance information at QBE FIRST's website www.updatemyinsurance.com operated out of QBE FIRST's Irvine, California offices.

58.   Like its first cycle letter, QBE FIRST's December 30, 2011 "Hazard Insurance Reminder" cycle letter admits the letter is an attempt to collect a debt and it, as the true initiator of the communication, is acting as a debt collector attempting to collect a debt, as follows:

> AMERICAN HOME MORTGAGE SERVICING, INC., IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.   ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IN THE EVENT THE DEBT HAS BEEN DISCHARGED PURSUANT TO OR THE ADDRESSEE OR RECIPIENT IS UNDER THE PROTECTION OF FEDERAL BANKRUPTCY LAW, THIS COMMUNICATION IS SOLELY FOR INFORMATION PURPOSES AND IS NOT AN ATTEMPT TO COLLECT A DEBT.

The debt QBE FIRST was attempting to collect in the Tigbaos' second cycle letter was the obligation by the Tigbaos to purchase hazard insurance for the property that was the security for their mortgage loan.

/ / /

---

[15] *See* Exhibit 9.

59.     Also like QBE FIRST's first cycle letter, nothing in its second cycle letter indicated it was prepared by or mailed by QBE FIRST, and not American Home.

60.     Before January 31, 2012, QBE FIRST made the decision to purchase FPI for the Tigbaos, and to improperly back-date the FPI coverage to November 16, 2011, the date the Tigbaos' individual coverage under their Liberty Mutual policy lapsed. As with all QBE FIRST's FPI decisions, QBE FIRST made the decision to purchase FPI for the Tigbaos and to back-date it to the date their individual coverage lapsed from QBE FIRST's offices in Irvine, California.  QBE FIRST made the decision to back-date the Tigbaos' FPI to November 16, 2011 despite the fact that the Tigbaos maintained coverage insuring American Home's interest in their property until at least December 2, 2011 by virtue of their Liberty Mutual policy's Mortgage Clause.

61.     In placing the FPI policy, the Tigbaos incurred a debt to QBE Insurance Corporation, the company that issued the policy for the Tigbaos' residence and that listed them as named insureds.[16]  After the QBE Insurance Corporation FPI policy was placed, the Tigbaos' debt was bought by American Home when it paid the Tigbaos' premium for the policy.  American Home then assigned the collection of that debt to QBE FIRST as part of QBE FIRST's standard FPI program.

62.     On February 3, 2012, QBE FIRST sent the Tigbaos a third cycle letter referencing "HAZARD INSURANCE LENDER PLACED POLICY COVER LETTER."[17]  Like the first two cycle letters sent to the Tigbaos, this third cycle letter suggests it was drafted on American Home's letterhead and using American Home's name.  However, American Home had no role in drafting or mailing this third cycle letter to the Tigbaos.

63.     The "HAZARD INSURANCE LENDER PLACED POLICY COVER LETTER" cycle letter indicated "[w]e have not received the proof of insurance we

---

[16] *See* Exhibit 10.

[17] *See* Exhibit 11.

Class Action Complaint for Violation Of The California Unfair Competition Law; Violation of the Federal Fair Debt Collection Practices Act; and Common Law Restitution Based On Quasi-Contract/Unjust Enrichment;

previously requested for the property location shown above.  At your expense, we purchased lender placed hazard insurance to protect our interest in the property.  The premium cost for purchasing this insurance is shown on the attached policy declaration.  You are solely responsible for the repayment of this cost."  This third cycle letter goes on to say, "You will be required to repay the amount shown on the enclosed policy, as well as interest based on the rate of your current note.  This amount will be charged to your escrow account.  If you do not have an escrow account, one will be established for all property insurance on your loan for the remaining term of the loan."

64.   As with QBE FIRST's first two cycle letters, the third cycle letter sent to the Tigbaos was drafted and mailed by QBE FIRST out of its Irvine, California offices.   The "HAZARD INSURANCE LENDER PLACED POLICY COVER LETTER" cycle letter included QBE FIRST's Orange, California P.O. Box number and QBE FIRST's California fax number for all correspondence regarding the FPI coverage and the debt incurred by virtue of said FPI.  Despite being prepared and mailed by QBE FIRST, nothing in the third cycle letter names QBE FIRST or otherwise suggests QBE FIRST had any role in the drafting or mailing of the letter.

65.   Also like the first two cycle letters, the February 3, 2012 cycle letter admits the letter is an attempt to collect a debt and OBE FIRST, as the true initiator of the communication, is acting as a debt collector attempting to collect a debt, as follows:

> AMERICAN HOME MORTGAGE SERVICING, INC., IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.   ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IN THE EVENT THE DEBT HAS BEEN DISCHARGED PURSUANT TO OR THE ADDRESSEE OR RECIPIENT IS UNDER THE PROTECTION OF FEDERAL BANKRUPTCY LAW, THIS COMMUNICATION IS SOLELY FOR INFORMATION PURPOSES AND IS NOT AN ATTEMPT TO COLLECT A DEBT.

The debt QBE FIRST was attempting to collect in this third cycle letter sent to the Tigbaos was the obligation to pay for the FPI placed on the Tigbaos' property.  QBE

FIRST identifies the amount of the alleged debt being collected in the third cycle letter by stated, "[t]he premium cost for purchasing this insurance is shown on the attached policy declaration.  You are solely responsible for the repayment of this cost."[18]

66.    Enclosed with the February 3, 2012 cycle letter was an FPI policy issued by QBE Insurance Corporation called a "Dwelling Hazard Coverage Form," with an "Additional Named Insured Certificate."[19]  The Additional Named Insured Certificate identified Dorothy Tigbao and Omar Tigbao as "Additional Named Insured[s]" for the FPI policy.  The FPI policy indicates it was issued for the term from November 16, 2011 to November 16, 2012, and provides $198,000 worth of coverage.  The premium cost for the one year of FPI coverage was listed as $1,900.80.

67.    On January 31, 2012, $1,900.80 was added to the Tigbaos' mortgage loan for the FPI that QBE FIRST decided to purchase for the Tigbaos' home.  At this time, $641.98 in the Tigbaos' American Home escrow account was paid to QBE Insurance Corporation for the FPI coverage.  The remaining balance of $1,258.82 for the FPI premium was later (i.e., after QBE FIRST's February 3, 2012 cycle letter) collected from the Tigbaos by virtue of their continuing to pay their mortgage loan.  QBE FIRST collected a portion of the Tigbaos' debt before notifying the Tigbaos that the debt for the FPI premium was even incurred, and QBE FIRST never provided the Tigbaos a validation of any debt the Tigbaos allegedly owed.

### QBE FIRST FRAUDULENTLY CONCEALS ITS DEBT COLLECTION ACTIVITIES, THEREBY TOLLING THE STATUTE OF LIMITATIONS

68.    QBE FIRST's debt collection activities, originating out of QBE FIRST's Irvine, California offices, are fraudulently concealed from borrowers.

/ / /

---

[18] *Id.*

[19] *See* Exhibit 10.

Class Action Complaint for Violation Of The California Unfair Competition Law; Violation of the Federal Fair Debt Collection Practices Act; and Common Law Restitution Based On Quasi-Contract/Unjust Enrichment;

69.    As detailed above, QBE FIRST's cycle letters are sent in an attempt to collect the debts created by the obligation to obtain hazard insurance and the obligation to pay the premium for any FPI placed.  QBE FIRST attempts to collect these debts by sending its debt collection cycle letters on the letterhead of borrowers' Mortgage Lenders'/Servicers', and sending those letters in envelopes identifying the borrowers' Mortgage Lenders/Servicers as the sender.

70.    Unlike third-party debt collection companies such as QBE FIRST, Mortgage Lenders/Servicers are generally exempt from actions under the FDCPA. Thus, by QBE FIRST sending its debt collection letters on Mortgage Lenders'/Servicers' letterhead, neither the average consumer nor the least sophisticated debtor would have reason to investigate violations of the FDCPA by their Mortgage Lenders/Servicers.

71.    Moreover, by using Mortgage Lenders'/Servicers' letterhead in attempting to collect these debts from borrowers, QBE FIRST actively conceals the fact that it is the company attempting to collect the debts.  Indeed, QBE FIRST never uses its own name when attempting to collect a debt from a borrower that is incurred by virtue of QBE FIRST's FPI program.

72.    No reasonably prudent borrower, nor the least sophisticated debtor, receiving QBE FIRST's debt collection letters would have reason to suspect that the letters were drafted or mailed by QBE FIRST rather than their Mortgage Lenders/Servicers, because the letters are printed on their Mortgage Lenders'/Servicers' letterhead, direct responsive communications to their Mortgage Lenders/Servicers, and purport to be debt collection notices from the borrower's Mortgage Lenders/Servicers.  Thus, even if a borrower suspected that the letters on their Mortgage Lenders'/Servicers' letterhead violated the FDCPA, the borrower would have no reason to pursue an FDCPA action against QBE FIRST.

73.    QBE FIRST's affirmative misrepresentation of who the debt collection communication was coming from, along with its concealment that it was the company

Class Action Complaint for Violation Of The California Unfair Competition Law; Violation of the Federal Fair Debt Collection Practices Act; and Common Law Restitution Based On Quasi-Contract/Unjust Enrichment;

1  attempting to collect the debt, gave borrowers no reason to suspect that QBE FIRST
2  was the company sending the cycle letters and attempting to collect a debt.  Thus,
3  borrowers had no reason to investigate whether QBE FIRST was attempting to collect
4  a debt from them.

5      74.   As such, QBE FIRST's concealment of its debt collection efforts tolls the
6  applicable statute of limitations for Plaintiffs' FDCPA claims.

7                        **CLASS ACTION ALLEGATIONS**

8      75.   Plaintiffs Omar Tigbao and Dorothy Tigbao bring this action on behalf of
9  themselves and all other borrowers in the United States with personal and commercial
10  mortgage loans who, on or after December 28, 2008, had FPI placed by QBE FIRST,
11  and/or other FPI insurers affiliated with QBE FIRST, while such borrowers still
12  maintained hazard insurance coverage covering their Mortgage Lenders'/Servicers'
13  interest in the mortgaged property ("FPI Class").  Plaintiffs allege this FPI Class
14  pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2) and
15  23(b)(3).

16      76.   Plaintiffs Omar Tigbao and Dorothy Tigbao also bring this action on
17  behalf of themselves and on behalf of all other persons in the United States with
18  mortgage loans primarily for personal, family or household purposes who received a
19  debt collection notice in the form of a cycle letter from QBE FIRST that did not
20  accurately disclose the amount of the debt owed due to the purchase of FPI, did not
21  disclose the fact that QBE FIRST was the debt collector sending the notice, or did not
22  provide a validation of the alleged debt ("FDCPA Class").  Plaintiffs bring this
23  FDCPA Class pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1),
24  23(b)(2) and 23(b)(3).

25      77.   Excluded from the FPI Class and FDCPA Class are: (i) Defendants and
26  their employees, principals, affiliated entities, legal representatives, successors and
27  assigns; and (ii) the judges to whom this action is assigned and any members of their
28  immediate families.  Plaintiffs reserve the right to alter or amend the class definitions

1   of the FPI Class and/or the FDCPA Class based upon discovery, investigation, and the

2   Court's rulings herein.

3          78.    Upon information and belief, there are tens of thousands of FPI Class

4   members and tens of thousands of FDCPA Class members who are geographically

5   dispersed throughout the United States. Therefore, individual joinder of all members

6   of the FPI Class or the FDCPA Class would be impracticable.

7          79.    Common questions of law or fact exist as to all members of the FPI

8   Class. These questions predominate over the questions affecting only individual class

9   members. These common legal or factual questions include:

   a.   Whether the claims herein arise out of form notices, standard
        contracts, and common routine procedures used by QBE
        FIRST under its FPI program in substantially similar
        circumstances;

   b.   whether QBE FIRST's conduct emanated out of Irvine,
        California;

   c.   whether QBE FIRST assumed the liabilities for Balboa's FPI
        program;

   d.   whether QBE FIRST made the decision to purchase FPI
        coverage back-dated to a date when FPI Class members still
        maintained their own hazard insurance coverage for their
        lender's interest in the property securing the mortgage by
        virtue of a Mortgage Clause;

   e.   whether QBE FIRST's decision to back-date FPI coverage
        before the termination of the mortgage lender's coverage
        under the Mortgage Clause violates California Business &
        Professions Code sections 17200, *et seq*;

   f.   the appropriate measure of damages, restitutionary
        disgorgement and/or restitution; and

   g.   whether FPI Class members are entitled to declaratory relief
        restraining such business practices by QBE FIRST.

24         80.    Common questions of law or fact also exist as to all members of the

25   FDCPA Class. These questions predominate over the questions affecting only

26   individual class members. These common legal or factual questions include:

   a.   Whether the claims herein arise out of form notices used by
        QBE FIRST in substantially similar circumstances;

---

27

b. whether QBE FIRST is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6);

c. whether a borrower's obligation to obtain hazard insurance coverage is a "debt" as defined by the FDCPA, 15 U.S.C. § 1692a(5);

d. whether a borrower's obligation to pay for FPI coverage is a "debt" as defined by the FDCPA, 15 U.S.C. § 1692a(5);

e. whether QBE FIRST made any false or misleading representations in violation of the FDCPA, 15 U.S.C. § 1692e;

f. whether QBE FIRST engaged in any unfair practices in violation of the FDCPA, 15 U.S.C. § 1692f;

g. whether QBE FIRST provided a validation of debts as required by the FDCPA, 15 U.S.C. § 1692g; and

h. the appropriate measure of damages under the FDCPA, 15 U.S.C. § 1692k.

81.   Plaintiffs Omar Tigbao and Dorothy Tigbao's claims are typical of the claims of the FPI Class in that they were borrowers who had FPI placed by QBE FIRST while they maintained hazard insurance covering their lender's interest in the properties securing their mortgage loans by virtue of the Mortgage Clauses in their individual hazard insurance policies. Plaintiffs Omar Tigbao and Dorothy Tigbao are no different in any relevant respect from any other FPI Class member, and the relief sought is common to the FPI Class.

82.   Plaintiffs Omar Tigbao and Dorothy Tigbao's claims are typical of the claims of the FDCPA Class in that they received debt collection notices from QBE FIRST that did not disclose that QBE FIRST was the company attempting to collect the debt, did not accurately disclose the amount of the debt allegedly owed by the purchase of FPI, and did not provide the Tigbaos with the required debt validation notice. Plaintiffs Omar Tigbao and Dorothy Tigbao are no different in any relevant respect from any other FDCPA Class member, and the relief sought is common to the FDCPA Class.

/ / /

Class Action Complaint for Violation Of The California Unfair Competition Law; Violation of the Federal Fair Debt Collection Practices Act; and Common Law Restitution Based On Quasi-Contract/Unjust Enrichment;

83.     Plaintiffs Omar Tigbao and Dorothy Tigbao are adequate representatives of the FPI Class because their interests do not conflict with the interests of the FPI Class members they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation.  Plaintiffs Omar Tigbao and Dorothy Tigbao and their counsel will adequately protect the interests of the FPI Class.

84.     Plaintiffs Omar Tigbao and Dorothy Tigbao are adequate representatives of the FDCPA Class because their interests do not conflict with the interests of the FDCPA Class members they seeks to represent, and they have retained counsel competent and experienced in conducting complex class action litigation.  Plaintiffs Omar Tigbao and Dorothy Tigbao and their counsel will adequately protect the interests of the FDCPA Class.

85.     A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The class size is such that separate actions would be impractical and inefficient.  The damages suffered by each individual class member likely will be relatively modest compared to the burden and expense of individual prosecution of the complex litigation necessitated by QBE FIRST's conduct.  Thus, it would be virtually impossible for class members individually to effectively redress the wrongs done to them.  Moreover, even if the class members could afford individual actions, it would still not be preferable to class-wide litigation.  Individualized actions present the potential for inconsistent or contradictory judgments.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

86.     In the alternative, the Classes may be certified because QBE FIRST has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate preliminary and final equitable relief with respect to the Classes.

/ / /

## FIRST CAUSE OF ACTION
### ("Unfair" Business Practices in Violation of The California Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)

87.   Plaintiffs hereby incorporate each and every paragraph of this Complaint and restate them as if they were fully written herein.  This claim is brought on behalf of Plaintiffs Omar Tigbao and Dorothy Tigbao and the FPI Class.

88.   The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

89.   A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

90.   QBE FIRST has and continues to violate the "unfair" prong of the UCL through its practice of deciding to place FPI coverage back-dated to a period when a borrower maintains hazard insurance coverage for their mortgage lender by virtue of a Mortgage Clause in their individual hazard insurance policy, which conduct occurs and emanates from QBE FIRST's offices in Irvine, California.  The gravity of the harm to members of the FPI Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications and/or motives of QBE FIRST for engaging in such deceptive acts and practices.  By committing the acts and practices alleged above, QBE FIRST has engaged, and continue to be engaged, in unfair business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

91.   QBE FIRST has and continues to violate the "unfair" prong of the UCL by also failing to identify itself as a debt collector attempting to collect a debt, and by failing to provide the required debt validation notification to borrowers, which conduct occurs and emanates from QBE FIRST's offices in Irvine, California.  The gravity of the harm to members of the FPI Class resulting from such unfair acts and

Class Action Complaint for Violation Of The California Unfair Competition Law; Violation of the Federal Fair Debt Collection Practices Act; and Common Law Restitution Based On Quasi-Contract/Unjust Enrichment;

practices outweighs any conceivable reasons, justifications and/or motives of QBE FIRST for engaging in such deceptive acts and practices.  By committing the acts and practices alleged above, QBE FIRST has engaged, and continue to be engaged, in unfair business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

92.     Through these unfair acts and practices, QBE FIRST has obtained, and continues to unfairly obtain, money from members of the FPI Class as a result of the premium charged for FPI during the time when borrowers maintain their own hazard insurance coverage that covers at least the mortgagee's interest in the secured property.  As such, Plaintiffs request that this Court cause QBE FIRST to restore the premiums unfairly charged to Plaintiffs and all FPI Class members, to disgorge the profits QBE FIRST has made on the FPI transactions at issue for Plaintiffs and all FPI Class members, and to enjoin QBE FIRST from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future as alleged herein.  Otherwise, the FPI Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.[20]

### SECOND CAUSE OF ACTION
#### (Violation of the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*)

93.     Plaintiffs hereby incorporate each and every paragraph of this Complaint and restate them as if they were fully written herein.  This claim is brought on behalf of Plaintiffs Omar Tigbao and Dorothy Tigbao and the FDCPA Class.

94.     The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property,

---

[20] Plaintiffs allege QBE's unfair conduct which emanates entirely out of Irvine, California subjects QBE to California's UCL regardless of where a borrower who is inappropriately force-placed as alleged herein resides.  To the extent the Court determines the Tigbaos may not bring an action under California's UCL, they reserve the right to amend their complaint to add a claim for a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.* for QBE's unfair practices.

1  insurance or service which are the subject of the transaction or primarily for personal,

2  family, or household purposes, whether or not such obligation has been reduced to

3  judgment."

4       95.   The FDCPA defines "debt collector" as "any person who uses any

5  instrumentality of interstate commerce or the mails in any business the principal

6  purpose of which is the collection of any debts, or who regularly collects or attempts

7  to collect, directly or indirectly, debts owed or due or asserted to be owed or due

8  another." 15 U.S.C. § 1692a(6).

9       96.   QBE FIRST is a "debt collector" under the FDCPA as it uses interstate

10  commerce and the mails to regularly collect debts owed or due or asserted to be owed

11  by mortgage borrowers.

12       97.   The obligation that a borrower purchase hazard insurance is a "debt" as

13  defined by the FDCPA because it arises out of the agreement between homeowners

14  and their lenders and obliges the homeowners to pay money for insurance to cover the

15  lenders' interest in the mortgaged property.

16       98.   The obligation that a borrower pay for the premiums incurred for FPI

17  after it has been issued is also a "debt" as defined by the FDCPA because it obliges

18  the borrower to pay money arising out of the issuance of the insurance policy.

19       99.   The FDCPA prohibits a debt collector from using "any false, deceptive,

20  or misleading representation or means in connection with the collection of any debt"

21  (15 U.S.C. § 1692e); from using any "unfair or unconscionable means to collect or

22  attempt to collect a debt" (15 U.S.C. § 1692f); or from failing to validate debts after

23  its initial communication with a consumer in connection with the collection of any

24  debt (15 U.S.C. § 1692g).

25       100.  QBE FIRST violates each of these prohibitions of the FDCPA in the

26  following manner:

27  ///

28  ///

a. In violation of 15 U.S.C. § 1692e(10) and (14), QBE FIRST uses false representations and deception to collect or attempt to collect a debt by indicating in its debt collection letters that the letters are originating from the borrower's mortgage lender or mortgage servicer when they are not, and by not using QBE FIRST's own business, company or organization name in its debt collection letters.

b. In violation of 15 U.S.C. § 1692e(2), QBE FIRST falsely represents the amount of the debt it allegedly owed for the FPI it decides to purchase because QBE FIRST back-dates FPI policies to a date when borrowers maintain their own hazard insurance covering the interest of their lender, and are not required to have any additional coverage.

c. In violation of 15 U.S.C. § 1692f(1), QBE FIRST unfairly collects an amount for FPI that is not expressly authorized by the mortgage agreement between a borrower and their lender that creates the debt.   Pursuant to the typical mortgage agreement, lenders may not purchase FPI while their interest in the property securing the loan is covered, which includes the coverage provided by a Mortgage Clause.   By back-dating policies to a date when borrowers maintain their own hazard insurance coverage by virtue of a Mortgage Clause, QBE FIRST unfairly collects premium not authorized by the mortgage contract.

d. In violation of 15 U.S.C. § 1692f(8), on envelopes when communicating with consumers by the mails, QBE FIRST unfairly uses the language or symbol of mortgage lenders or mortgage servicers who are not sending the letter or attempting to collect the debt instead of QBE FIRST's own language or symbol.

e. In violation of 15 U.S.C. § 1692g, QBE FIRST does not provide a validation of debts within five (5) days after its initial communication with a consumer in connection with the collection of its debts.

101.   As a result of QBE FIRST's violations of the FDCPA, Plaintiffs Omar Tigbao and Dorothy Tigbao and the FDCPA Class members are entitled to their actual damages in an amount equal to the premium paid for FPI that overlapped with the period of time when they maintained their own hazard insurance coverage by virtue of a Mortgage Clause pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages each of the Tigbaos in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); class damages for FDCPA Class members that are not entitled to actual damages up to the lesser of $500,000 or 1 per centum of the net worth of QBE FIRST pursuant to 15

U.S.C. § 1692k(a)(2)(B)(ii); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from QBE FIRST.

## THIRD CAUSE OF ACTION
**(Restitution Based On Quasi-Contract/Unjust Enrichment under State Common Law)**

102.    Plaintiffs hereby incorporate each and every paragraph of this Complaint and restate them as if they were fully written herein.  Plaintiffs plead this Count in the alternative on behalf of themselves, the FDCPA Class and the FPI Class.

103.    QBE FIRST's conduct in deciding to purchase FPI policies back-dated to a date when borrowers still maintain their own hazard insurance coverage protecting their lender's interest in the property securing a mortgage loan by virtue of a Mortgage Clause, and QBE FIRST's debt collection practices associated therewith as described throughout this Complaint, are unfair and unlawful because QBE FIRST is charging borrowers for insurance they are not required to have, and deceptively collecting a debt that is not owed for that needless FPI.  QBE FIRST took money from Plaintiffs, FDCPA Class members and FPI Class members and has been unjustly enriched at their expense.  Therefore, QBE FIRST has been unjustly enriched, and has created a quasi-contractual obligation to restore these ill-gotten gains to Plaintiffs and the Classes.

104.    As a legal and equitable result of QBE FIRST's unjust enrichment, Plaintiffs and members of the Classes are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

## PRAYER

WHEREFORE, Plaintiffs, on behalf of themselves and other members of the FDCPA and FPI Classes request judgment for relief as follows:

A.    An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs Omar Tigbao and Dorothy Tigbao be appointed Class Representatives of the FDCPA Class, that Plaintiffs Omar Tigbao and

1  Dorothy Tigbao be appointed Class Representatives of the FPI Class, and that

2  Plaintiffs' counsel be appointed Counsel for the FPI Class and FDCPA Class.

3     B.     Restitution in such amount that Plaintiffs and all members of the FPI

4  Class paid for FPI that overlapped with their existing hazard insurance coverage, or

5  restitutionary disgorgement of the profits QBE FIRST obtained from those

6  transactions.

7     C.     Actual and statutory damages, costs and reasonable attorneys' fees

8  allowable under 15 U.S.C. 1692k on behalf of Plaintiffs Omar Tigbao and Dorothy

9  Tigbao and the FDCPA Class.

10    D.     A declaration and order enjoining QBE FIRST from making the decision

11 to place FPI back-dated to a date when a borrower maintains their own hazard

12 insurance covering the interest of the borrower's lender.

13    E.     A declaration and order enjoining QBE FIRST from failing to identify

14 itself as the debt collector attempting to collect a debt in its cycle letters to borrowers,

15 and from failing to provide a debt validation notification to borrowers after contacting

16 them regarding their hazard insurance requirements and obligation to pay for FPI.

17    F.     An order awarding Plaintiffs their costs of suit, including reasonable

18 attorneys' fees and pre and post-judgment interest on behalf of Plaintiffs and the

19 Classes.

20    G.     An order requiring an accounting for, and imposition of, a constructive

21 trust upon all monies received by QBE FIRST as a result of the unfair, misleading and

22 unlawful conduct alleged herein, with further disgorgement of such monies to

23 Plaintiffs and the FPI and FDCPA Classes.

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

Class Action Complaint for Violation Of The California Unfair Competition Law; Violation of the Federal Fair Debt Collection Practices Act; and Common Law Restitution Based On Quasi-Contract/Unjust Enrichment;

H.   Such other and further relief as may be deemed necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all causes of action and/or issues so triable.

DATED:  February 1, 2013

Respectfully Submitted,

Stephen F. Yunker (CSB 110159)

**YUNKER & SCHNEIDER**
655 West Broadway, Suite 1400
San Diego, California 92101
Tel:  (619) 233-5500
Fax:  (619) 233-5535
Email: sfy@yslaw.com

Joseph N. Kravec, Jr. (*pro hac* to be filed)
Wyatt A. Lison (*pro hac* to be filed)
**STEMBER FEINSTEIN DOYLE**
   **PAYNE & KRAVEC, LLC**
429 Forbes Avenue, 17th Floor
Pittsburgh, PA 15219
Tel:  (412) 281-8400
Fax:  (412) 281-1007
Email:  jkravec@stemberfeinstein.com
            wlison@stemberfeinstein.com

James M. Pietz (*pro hac* to be filed)
**PIETZ LAW OFFICE**
429 Forbes Avenue, Suite 1616
Allegheny Building
Pittsburgh, Pa. 15219
Tel:  412-288-4333
Fax:  412-288-4334
email: jpietz@jpietzlaw.com

Class Action Complaint for Violation Of The California Unfair Competition Law; Violation of the Federal Fair Debt
Collection Practices Act; and Common Law Restitution Based On Quasi-Contract/Unjust Enrichment;

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Josephine Tucker and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV13- 177 JST  (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

## Central District of California

OMAR TIGBAO and DOROTHY TIGBAO on behalf of )
themselves and all others similarly situated )
            *Plaintiff* )
            v. )
QBE FINANCIAL INSTITUTION RISK SERVICES, INC., )
d/b/a QBE FIRST, a Delaware Corporation, and DOES 1-50 )
            *Defendant* )

Civil Action No. **SACV13-00177 JST (MLGx)**

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

QBE FINANCIAL INSTITUTION RISK SERVICES, INC.,
d/b/a QBE FIRST
210 Interstate North Parkway
Atlanta, GA  30339

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) - or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) - you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Stephen F. Yunker
YUNKER & SCHNEIDER
655 West Broadway, Suite 1400
San Diego, CA  92101
Tel:  (619) 233-5500

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: FEBRUARY 1, 2013

                     *Signature of Clerk or Deputy*

1225

AO-440 (Rev. 12/09)          **SUMMONS IN A CIVIL ACTION**          Page 1 of 2



Martin Dean's
ESSENTIAL FORMS™

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**COPY**

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
OMAR TIGBAO AND DOROTHY TIGBAO on behalf of themselves and all others similarly situated,

**DEFENDANTS**
QBE FINANCIAL INSTITUTION RISK SERVICES, INC., d/b/a QBE FIRST, a Delaware Corporation, and DOES 1-50,

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Stephen F. Yunker, Esq.
YUNKER & SCHNEIDER
655 West Broadway, Suite 1400, San Diego, CA 92101, 619-233-5500

Attorneys (If Known)

Leah R. Mosner, Esq.
BuckleySandler LLP
100 Wilshire Blvd., Ste. 1000
Santa Monica, CA 90401

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  ☐ No     ☐ **MONEY DEMANDED IN COMPLAINT: $** 5,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. Sections 1692 et seq. Fair Debt Collection Act and violation of California Unfair Competition Law.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE/ PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | **REAL PROPERTY** | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 210 Land Condemnation | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | | ☐ 220 Foreclosure | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | | ☐ 230 Rent Lease & Ejectment | **IMMIGRATION** | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | | ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | | | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:**     Case Number: _____     **SACV13-00177 JST (MLGx)** _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)
☐ A.  Arise from the same or closely related transactions, happenings, or events; or
☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Pennsylvania |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Georgia |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date  February 1, 2013

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |